UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SONIA M.,[1]

                                    Plaintiff                    DECISION and ORDER

-vs-                                                             6:23-CV-06604-CJS

COMMISSIONER OF SOCIAL
SECURITY,

                                    Defendant.
_____

INTRODUCTION

     This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final

determination of the Commissioner of Social Security ("Commissioner" or "Defendant")

which denied the application of Plaintiff for Supplemental Security Income ("SSI")

benefits.   Plaintiff maintains that such determination is affected by errors of law and not

supported by substantial evidence.   In that regard, Plaintiff primarily maintains that

remand is required because the Administrative Law Judge ("ALJ") who denied her claim

failed to properly consider opinion evidence from her treating mental health therapist, and

also improperly relied on her ability to care for her children as evidence that she was able

to perform work activities.   Now before the Court is Plaintiff's motion for judgment on the

_____

[1]  The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective
immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in
the United States District Court for the Western District of New York, any non-government party will be
identified and referenced solely by first name and last initial."

pleadings (ECF No. 8) and Defendant's cross-motion for the same relief (ECF No. 14). For reasons discussed below, Plaintiff's application is granted, Defendant's application is denied, and the matter is remanded to the Commissioner for further administrative proceedings.

STANDARDS OF LAW

The Commissioner decides applications for disability benefits using a five-step sequential evaluation process:

> A five-step sequential analysis is used to evaluate disability claims. *See* 20 C.F.R. §§ 404.1520, 416.920.   First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a severe impairment[2] which significantly limits his physical or mental ability to do basic work activities.[3] If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in the regulations [or medically equals a listed impairment].   Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity [("RFC")] to perform his past work.[4]

---

[2] "At step two, the ALJ must determine whether the claimant has a 'severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R.] § 404.1509, or a combination of impairments that is severe and meets the duration requirement.' *Id*. If not, the claimant is deemed not disabled, and the inquiry ends." *Koch v. Colvin*, 570 F. App'x 99, 101 (2d Cir. 2014); *see also*, 20 C.F.R. § 404.1520(a)(4)(ii) ("At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.").

[3] The Commissioner's Regulations define basic work-related activities as follows: "Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include— (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting."   20 C.F.R. § 404.1522 (West 2023).

[4] Residual functional capacity "is what the claimant can still do despite the limitations imposed by his impairment." *Bushey v. Berryhill*, 739 F. App'x 668, 670–71 (2d Cir. 2018) (citations omitted); *see also*, 1996 WL 374184, Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996).

> Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.   The claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden at step five.[5]

*Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) (citations and internal quotation marks omitted).

An unsuccessful claimant may bring an action in federal district court to challenge the Commissioner's denial of the disability claim.   In such an action, "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405(g) (West).   Further, Section 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive."

The issue to be determined by the court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *see also, Barnaby v. Berryhill*, 773 F. App'x 642, 643 (2d Cir. 2019) ("[We] will uphold the

---

[5] "The Commissioner's burden at step five is to show the existence of possible employment for an individual with the RFC determined by the ALJ in the fourth step of the sequential analysis." *Smith v. Berryhill*, 740 F. App'x 721, 726–27 (2d Cir. 2018) (citation omitted). The ALJ typically does this either by resorting to the medical vocational "grids" or, where the claimant has a non-exertional impairment, by taking testimony from a vocational expert [("VE")]. *See, Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986) ("[T]he mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines. A more appropriate approach is that when a claimant's nonexertional impairments significantly diminish his ability to work—over and above any incapacity caused solely from exertional limitations—so that he is unable to perform the full range of employment indicated by the medical vocational guidelines, then the Secretary must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform.").

decision if it is supported by substantial evidence and the correct legal standards were applied.") (citing *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) and *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).").

"First, the [c]ourt reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999); *see also, Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) ("[W]here an error of law has been made that might have affected the disposition of the case, this court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the [administrative law judge] [("]ALJ[)"]. Failure to apply the correct legal standards is grounds for reversal.") (citation omitted).

If the Commissioner applied the correct legal standards, the court next "examines the record to determine if the Commissioner's conclusions are supported by substantial evidence." *Tejada v. Apfel*, 167 F.3d at 773.  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (citation omitted).

> The substantial evidence standard is a very deferential standard of review— even more so than the 'clearly erroneous' standard, and the Commissioner's findings of fact must be upheld unless a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original). "An ALJ is not required to discuss every piece of evidence submitted, and the failure to cite specific evidence does not indicate that such evidence was not considered." *Id*.

*Banyai v. Berryhill*, 767 F. App'x 176, 177 (2d Cir. 2019), as amended (Apr. 30, 2019)

(internal quotation marks omitted); *see also, Snyder v. Comm'r of Soc. Sec.*, No. 22-277-CV, 2023 WL 1943108, at *1 (2d Cir. Feb. 13, 2023) ("While the substantial evidence standard requires we find more than a mere scintilla of support for the Commissioner's decision, it is still a very deferential standard of review requiring us to uphold the Commissioner's findings unless a reasonable factfinder would *have to conclude otherwise*.") (emphasis in original; citations and internal quotation marks omitted); *Schillo v. Kijakazi*, 31 F.4th 64, 69 (2d Cir. 2022) ("We may vacate the agency's disability determination only if it is based on legal error or unsupported by 'substantial evidence'—that is, if no reasonable factfinder could have reached the same conclusion as the ALJ.").

In applying this standard, a court is not permitted to re-weigh the evidence. *See, Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *see also, Riordan v. Barnhart*, No. 06 CIV 4773 AKH, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007) ("The court does not engage in a *de novo* determination of whether or not the claimant is disabled, but instead determines whether correct legal standards were applied and whether substantial evidence supports the decision of the Commissioner.") (citations omitted).   "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted).   "In other words, this Court must afford the Commissioner's determination considerable deference, and 'may not substitute its own judgment for that of the [Commissioner], even if it might

justifiably have reached a different result upon a *de novo* review.'" *Melia v. Colvin*, No. 1:14-CV-00226 MAD, 2015 WL 4041742, at *2 (N.D.N.Y. July 1, 2015) (quoting *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir.1984)).

When considering whether a particular finding or decision is supported by substantial evidence, a court may not rely on any *post hoc* rationalizations offered by the Commissioner, but it may consider evidence that was evidently considered by the ALJ even if it was not expressly mentioned in the administrative decision. *See, Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability. *E.g., Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir.1982). In *Berry*, we noted that, although we would remand for further findings or a clearer explanation where we could not fathom the ALJ's rationale "in relation to evidence in the record," we would not remand where "we were able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence." *Id*. *See also Miles v. Harris*, 645 F.2d 122, 124 (2d Cir.1981) ("Notwithstanding the apparent inconsistency between the reports of [two doctors], we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony ....")."); *see also*, *Loni S. v. Comm'r of Soc. Sec.*, No. 3:22-CV-805 (CFH), 2023 WL 4195887, at *19 (N.D.N.Y. June 27, 2023) ("The Court is required to look at the entire ALJ's decision when reviewing for substantial evidence. *See John L. M. v. Kijakazi*, No. 5:21-CV-368 (BKS/TWD), 2022

6

WL 3500187, at *2 (N.D.N.Y. Aug. 18, 2022) (citations omitted) ('[W]hile a reviewing court may not affirm the Commissioner's decision based on an impermissible *post-hoc* rationalization, it may affirm where the ALJ's consideration of the relevant factors can be gleaned from the ALJ's decision as a whole.').").

## FACTUAL and PROCEDURAL BACKGROUND

The reader is presumed to be familiar with the factual and procedural history of this action, which is set forth in the parties' papers.    The Court will refer to the record only as necessary to rule on the alleged errors identified by Plaintiff.

Plaintiff remained in school through the tenth grade, in regular education classes. Tr. 218.   Thereafter, Plaintiff had an extremely limited work history, the high point of which, in terms of earnings, was in 2009, when she had reported income of $2,745.90 from work as a hotel housekeeper. Tr. 212, 218.   Between 2010 and 2019, Plaintiff had total reported earnings of just $513. Tr. 212.

Plaintiff maintains that she became disabled from working on July 5, 2016, and remained disabled through November 11, 2019, after which she began working.[6]   During the closed period of alleged disability, Plaintiff claims to have been disabled due to depression, anxiety, and post-traumatic stress disorder ("PTSD").   Plaintiff indicated that her anxiety and depression made it difficult for her to leave her home and be around people in public. Tr. 232-233; 228 ("I feel like everyone is staring and I start to panic.");

---

[6] *See*, Tr. 1317 ("The claimant is currently working.   She has reported income at the substantial-gainful-activity level since 2020.   At the hearing, her representative requested a closed period from the application date of July 5, 2016, until November 11, 2019, the date the claimant began her employment.").

226 ("When I have to leave my apartment for an appointment or to go to the grocery store my anxiety won't let me sleep.").

Starting in 2014, Plaintiff received mental health treatment for social anxiety and depression primarily from therapist Ann Rodic, LMHC ("Rodic") at Genesee Mental Health Center. Tr. 221, 298.   In a progress note, Rodic described Plaintiff's symptoms as involving "social anxiety, interpersonal stressors, avoidance, trouble with sleeping, isolation, rumination, paranoid ideation within social context, hypervigilant of others in social setting." Tr. 312.   During talk-therapy sessions with Rodic, Plaintiff attributed much of her depression and social anxiety to situational stressors, such as family dynamics and romantic relationships with abusive men. *See, e.g.*, Tr. 456, 458, 475, 591, 1303. Plaintiff also attributed her social anxiety to embarrassment about her appearance, as it resulted from the medical condition of hirsutism. Tr. 335 ("Hair growth—feels like it is impacting her life significantly.   Embarrassed to leave the house.   Doesn't feel good even talking about it.   Sees therapist."); Tr. 339 ("Has excessive [hair growth] which causes her a lot of social anxiety—has taken over her life[.]"); Tr. 877 ("[Has] anxiety related to body image, going to have laser hair removal[; hirsutism] impacts her anxiety and self-conscious impacting ability to socialize in public and work . . . client feels   getting [laser hair removal] will motivate her to get out and work and be more social.").

Concerning Plaintiff's ability to work, in a treatment note from May 14, 2018, Rodic reported that the "barriers" preventing Plaintiff from returning to work were "childcare, lack of experience, transportation, high anxiety riding the bus." Tr. 982 ("Would like to work, barriers are childcare, lack of experience, transportation, high anxiety riding the bus.");

*see also*, Tr. 992 ("Client spoke about how worry has been a barrier to moving forward with employment needs.   She is anxious about being around larger groups of people so she has not been able to obtain/maintain employment.   She also reports catastrophic worry about what might happened to her children if they need day care when she worked.").

On June 30, 2023, following a hearing, the ALJ issued a Decision finding that Plaintiff was not disabled at any time during the period of alleged disability. Tr. 1317-1327. The ALJ found, in pertinent part, that Plaintiff had severe impairments consisting of depressive disorder, anxiety disorder, and PTSD, which did not meet or medically equal a listed impairment.   In explaining his step-three determination, the ALJ stated in pertinent part:

> In understanding, remembering, or applying information, the claimant had a mild limitation.   . . .   She filed this claim about two months after becoming pregnant with her fourth child, and throughout the relevant period, she was able to care for her children, cook, clean, shop regularly, manage her money, and keep scheduled appointments.
>
> ***
>
> As for adapting or managing oneself, the claimant experienced a moderate limitation.   . . . [S]he allegedly became very anxious when dealing with other people.   Her anxiety affected her ability to deal with stress.   She also alleged that she would become overwhelmed and would 'shut down' when stressed.   However, she was able to cook, clean, care for her children, shop, use the bus for transportation, and attend school.

Tr 1320, 1321.   The ALJ further found, prior to step-four of the sequential evaluation, that Plaintiff had the RFC to perform "a full range of work at all exertional levels but with the following nonexertional limitations: She could [no-more-than] frequently interact with coworkers and the general public.   She was limited to work that required simple

9

instructions/demonstration of up to one month of training to learn." Tr. 1321.    In explaining his RFC finding, the ALJ spent two paragraphs summarizing and discussing treatment notes from Plaintiff's mental health treatment providers during the relevant period. Tr. 1322 (last paragraph), 1323 (second full paragraph).

The ALJ next proceeded to discuss the medical "opinion evidence," and in particular, the opinions of examining consultative psychologist Christine Ransom ("Ransom") and non-examining agency consultant A. Chapman ("Chapman"), who indicated that Plaintiff's mental impairments were "mild" and "non-severe," respectively. The ALJ gave both opinions "significant weight" but nevertheless found that they understated Plaintiff's limitations. Tr. 1324.

The ALJ then noted that the record also contained "multiple [assessment] forms completed by the claimant's [treating] therapists at Genesee Mental Health Center, primarily Rodic, between 2016 and November 2019." Tr. 1324.   The ALJ found that these treating opinions deserved only "little weight," stating:

> The current record contains multiple forms completed by the claimant's therapists at Genesee Mental Health Center, primarily Anne Rodic, LMHC, between 2016 and November 2019.   The forms were 'psychological assessments of employability" for the county department of human services.   In the forms, Ms. Rodic assessed the claimant's abilities to perform simple instructions and tasks, maintain grooming and hygiene, work a low stress job, complete simple and complex tasks independently, maintain attention and concentration , and maintain regular attendance to a routine.   In them, Ms. Rodic assessed 'no' limitations to 'moderate' limitations in the specified areas (Ex.12F/19, 26, 30, 39, 42, 51, 55, 58-60, 63).   These forms are given little weight.   The assessed limitations were temporary in nature; they generally were for a three-month period pending follow-up evaluations (Ex. 12F/13, 18, 22, 26).   The forms were completed for a local county social services program to determine whether the claimant

should be temporarily exempt from a public assistance work requirement; the forms did not describe the claimant's limitations in vocational terms, and they were not intended to address Social Security requirements. In contrast to Social Security disability claims, the county form was a basis for exemption if a client's limitations were deemed more than mild. Furthermore, the forms were countered by a letter from Genesee to the claimant's representative in 2019, apparently in response to a request that Genesee provide an opinion of the claimant's specific limitations. In the letter, Genesee wrote that the claimant had been a patient since 2014, that she received therapy from Ms. Rodic, and that she was working toward stabilizing her mood and symptoms. The letter stated that Genesee was 'unable to respond to [the representative's] questionnaire in detail as we do not focus on specific work readiness and assessing the client's employability.' (Ex. 7F/2, 8F/2).

Tr. 1324-1325.   The letter was signed by Rodic. Tr. 1252.

Plaintiff's instant motion for judgment on the pleadings contends that the ALJ committed legal errors by failing to give valid reasons for assigning only "little weight" to the opinions of the treatment providers at Genesee Mental Health Center, and by improperly focusing on Plaintiff's ability to perform childcare duties when assessing her ability to perform work functions.   Plaintiff contends that remand for further administrative proceedings is required to address these errors.

Defendant counters that the ALJ's decision is free of legal error and supported by substantial evidence.   The Court has considered the parties' submissions, including Plaintiff's reply, and the entire administrative record.

## DISCUSSION

Preliminarily, the Court finds that the ALJ did not err in considering, or in giving improper weight to, Plaintiff's ability to care for her children.   On this point, it is clear that

11

there is no *per se* prohibition on an ALJ considering a claimant's ability to perform childcare duties. *See, e.g., LaValley v. Colvin*, 672 F. App'x 129, 131 (2d Cir. 2017) ("An ALJ must consider a claimant's testimony, but may look to other evidence in determining credibility. *See* 20 C.F.R. §§ 404.1529(c); 416.929(c). Here, the ALJ considered various sources of evidence and justifiably declined to give less than determinative weight to LaValley's testimony regarding the debilitating effects of her pain. For example, the ALJ looked to LaValley's daily routine; she stated that she could clean the house, do laundry, dress and bathe herself, and perform childcare, among other activities. *See* 20 C.F.R. § 404.1529(c)(3)(i) (listing "daily activities" as an appropriate consideration in determining a claimant's level of pain)."); *see also, Gabrielle C.-T. v. Comm'r of Soc. Sec.*, No. 23-CV-523 (JLS), 2024 WL 5232839, at *6 (W.D.N.Y. Dec. 27, 2024) ("[T]he ALJ was permitted to consider Plaintiff's ability to care for her child in formulating the RFC. *Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) (ALJ properly considered plaintiff's ability "to engage in complex tasks" such as childcare); *Poupore [v. Astrue,]*, 566 F.3d [303,]307 [(2d Cir. 2009),] ("[T]he ALJ correctly noted that Poupore was able to care for his one-year-old child, including changing diapers, that he sometimes vacuumed and washed dishes, that he occasionally drove, and that he watched television, read, and used the computer").

On the other hand, an ALJ cannot simply cite a claimant's ability to care for her children (or to engage in other activities necessary to her own welfare) as a basis to deny benefits or to disregard other evidence of disability, where such activities of daily living do not "truly show that the claimant is capable of working":

[W]e disagree with the ALJ that Colgan's ability to engage in certain

activities of daily living—such as caring for her two children, preparing meals and washing dishes, and driving to her medical appointments—provided substantial record evidence to discount Dr. Ward's medical opinion.

There is some evidence that Colgan, a single mother, could to some extent care for her two young children and engage in activities necessary to her own welfare. But we cannot say that these make a treating physician's findings flawed and foreclose an applicant's entitlement to disability benefits. *See, e.g., Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("We have stated on numerous occasions that a claimant need not be an invalid to be found disabled under the Social Security Act.") (internal citations and quotation marks omitted). Indeed, as we powerfully explained in *Balsamo*:

> [W]hen a disabled person gamely chooses to endure pain in order to pursue important goals, such as attending church and helping his wife on occasion go shopping for their family, it would be a shame to hold this endurance against him in determining benefits unless his conduct truly showed that he is capable of working.

*Id*. at 81–82 (internal citation and quotation marks omitted).

*Colgan v. Kijakazi*, 22 F.4th 353, 363 (2d Cir. 2022).

In the instant case, the ALJ made a few references to Plaintiff's ability to care for her four children notwithstanding her mental impairments. More specifically, the ALJ mentioned Plaintiff's childcare activities in the context of discussing her ability to understand, remember or apply information and her ability to adapt or manage herself. Tr. 1320, 1321. The ALJ also cited Plaintiff's ability to perform childcare activities as one of several pieces of evidence supporting the opinion of Dr. Ransom that Plaintiff could accomplish simple tasks, maintain a routine, relate adequately, and deal with stress. Tr. 1324.

At the same time, the ALJ acknowledged evidence indicating that Plaintiff's parenting and childcare duties sometimes exacerbated her mental health symptoms. Tr. 1323 ("[T]he claimant reportedly still had difficulty dealing with stressors such as an abusive ex-boyfriend, a custody battle, and an unplanned pregnancy."); *see also, i*d. ("She did feel overwhelmed with the stress of being a single mother to four children with ages ranging from infant to teens.   She reported increased anxiety with familial stressors and a tendency to catastrophize about what might happen to her younger children if she left them in daycare in order to work [resulting from her own experience of having been sexually abused].").

More importantly, the ALJ recognized that Plaintiff's anxiety was primarily related to her going out into public and interacting with people in public, for which he made allowance in his RFC finding. *See, e.g.*, Tr. 1321 ("She allegedly became very anxious when dealing with other people."); 1322 ("She experienced chronic anxiety, especially when she had to leave her apartment for errands such as grocery shopping or attending a doctor appointment.   She experienced symptoms of panic and anxiety when she anticipated leaving her home, and when she was in public places.").

Considering the ALJ's decision as a whole, the Court cannot agree with Plaintiff that the ALJ erred by unfairly considering Plaintiff's ability to perform childcare duties when making any of his various findings.   Indeed, despite finding that Plaintiff had been able to "juggle[ ] childcare, homecare, and schooling during the relevant period," the ALJ nevertheless found that Plaintiff's anxiety and depression would cause her to have moderate limitations in interacting with others and adapting/managing herself in a work

setting, even though Dr. Ransom had opined that she would have only mild limitations in those areas of functioning. Tr. 1324.   That finding, and the RFC finding limiting Plaintiff to only simple work involving no-more-than-frequent contact with coworkers and the public, recognized and accounted for Plaintiff's contention that her anxiety and stress were exacerbated by having to leave her home and interact with people outside of her family. *See, e.g.*, Tr. 1324 (Finding that Plaintiff was more limited than what Dr. Ranson had indicated, stating: "I find that the claimant had moderate–rather than mild—limitations in interacting with others and adapting/managing herself prior to November 2019.   My finding is based on the anxious and depressed mood that the claimant occasionally exhibited in mental-health encounters, and on claimant's allegations regarding her increased anxiety *in public places* and her difficulty managing her anxiety and stress.") (emphasis added).[7]   Consequently, the Court finds that this aspect of Plaintiff's motion lacks merit.

However, the Court finds merit to Plaintiff's alternative contention that the ALJ committed reversible error by giving inadequate reasons for assigning only "little weight" to the opinions of her treating mental health therapists.   In particular, Plaintiff states:

> Plaintiff's [mental health] treatment team completed multiple opinions speaking to Plaintiff's functional limitations due to major depressive disorder and anxiety disorder. On March 16, 2016, and August 1, 2016, Plaintiff's social worker opined that Plaintiff was "moderately" limited in demonstrating the capacity to perform simple and complex tasks independently; maintaining attention and concentration for rote tasks; regularly attending to a routine and maintaining a schedule; and performing low stress and simple tasks. (Tr. 1534; 1539). On December 28, 2016, May 5, 2017,

---

[7]  *See also* ,Tr. 1322, fourth full paragraph (ALJ discusses Plaintiff's claims that her mental health symptoms worsened when she had to leave home and interact with people in public).

October 13, 2017, January 31, 2018, and May 7, 2018, LMHC Anne Rodic opined that Plaintiff was "moderately" limited in performing simple and complex tasks independently; maintaining attention and concentration for rote tasks; and regularly attending to a routine and maintaining a schedule. (Tr. 1544; 1553; 1557; 1561; 1569).

On September 11, 2018, and October 22, 2018, Ms. Rodic opined that Plaintiff had "moderate" limitations in performing simple and complex tasks independently; and regularly attending to a routine and maintaining a schedule. (Tr. 1573; 1582). On January 23, 2019, May 13, 2019, Ms. Rodic opined that Plaintiff had "moderate" limitations in performing simple and complex tasks independently; maintaining attention and concentration for rote tasks; and regularly attending to a routine and maintaining a schedule. (Tr. 1586; 1590). On November 6, 2019, Ms. Rodic opined that Plaintiff had "mild" limitations in maintaining attention and concentration for rote tasks; regularly attending to a routine and maintaining a schedule; dealing with normal work stresses; and working in coordination with or proximity to others without being unduly distracted. (Tr. 1594).

\*\*\*

The record contains eleven separate statements from Plaintiff's longtime mental health counselor. (Tr. 1539; 1544; 1553; 1557; 1561; 1569; 1573; 1582; 1586; 1590; 1594). These opinions track Plaintiff's progress during the relevant period—beginning with significant limitations and improving to the point where she could begin working in November 2019. However, the ALJ gave these opinions "little weight" for dubious reasons. (Tr. 1324-1325). Because the ALJ failed to properly evaluate these key opinions—the ALJ's determination is not supported by substantial evidence. This error plainly warrants remand.

Under the law as it stood for Plaintiff's application date, the ALJ is obligated to "evaluate every medical opinion we receive." 20 C.F.R. §404.1527(c). Unless he gives controlling weight to the treating source(s), the ALJ is obligated to consider a number of factors in deciding the weight of the treating sources. 20 C.F.R. § 404.1527(c). In cases where treating physicians' opinions are not given controlling weight, the Second Circuit repeatedly finds that "the Social Security Administration is required to explain the weight it gives to the opinions of a treating physician" using the factors of the Treating Physician Rule. *Snell v. Apfel*, 177 F.3d 128, 133

(2nd Cir. 1999). "While the Commissioner is free to decide that the opinions of treating sources and other sources are entitled to no weight or little weight, those decisions should be thoroughly explained." *Roberts v. Berryhill*, No. 1:17-CV-01129 (HBF), 2019 WL 1146343, at *8 (W.D.N.Y. Mar. 13, 2019).

It should be noted that under the Treating Physician rule, a licensed mental health counselor [is] not considered a full treating source. *See* 20 C.F.R. § 416.913(d). While the ALJ is "free to decide that the opinions of 'other sources' ... are entitled to no weight or little weight, those decisions should be explained and be based on all the evidence before the ALJ." *Thomas v. Berryhill*, 337 F. Supp. 3d 235, 241 (W.D.N.Y. 2018) (internal quotations omitted). The Second Circuit has explained that the ALJ must weigh the opinions of an "other source" according to a number of factors, including the length, nature, and extent of the treatment relationship and the frequency of examination; evidence in support of the opinion; the opinion's consistency with the record as a whole; and other relevant factors. *Evans v. Colvin*, 649 F. App'x 35, 38–39 (2d Cir. 2016).

In the instant case, the ALJ gave the multiple forms completed by Plaintiff's therapist LMHC Anne Rodic only "little weight." (Tr. 1324). However, the ALJ did not discuss the content of the opinion or how it compared to the evidence of record. Instead, he attacks the form that was used. (Tr. 1324). The ALJ asserts that because the forms were completed for county social services "the forms did not describe the claimant's limitations in vocational terms, and they were not intended to address Social Security requirements." (Tr. 1324-1325). While these forms were for the purposes of public assistance—they are clearly in vocational terms. In fact, they are in the same terms used by Agency sources of record. LMHC Rodic identified limitations in categories including performing simple and complex tasks independently; maintaining attention and concentration for rote tasks; regularly attending to a routine and maintaining a schedule; and performing low stress and simple tasks. (Tr. Ex. 1539). When this is compared to the Social Security consultative examination findings—they use practically identical language. Dr. Ransom spoke to performing simple tasks independently; maintaining attention and concentration for simple tasks; maintaining a simple regular schedule; and appropriately dealing with stress. (Tr. 325). If these were functional terms when offered by Dr.

Ransom—they are obviously functional terms when offered by LMHC Rodic.

The ALJ also faults these opinions because they are "temporary in nature." (Tr. 1324). This was directly addressed by this Court in *Garcia Medina v. Commissioner of Social Security*. *See* 2019 WL 1230081, at *4 (W.D.N.Y. Mar. 15, 2019). Such reasoning was rejected because even if the opinions were temporary, the opinions were offered over several months showed the claimant would be disabled additional periods of time. *Id*. The ALJ needed to look at the cumulative "total period" the opinions spoke to. *Id*. Similarly, there were eleven opinions from August 1, 2016 to November 6, 2019 in the instant case that cumulatively show Plaintiff was limited across that three year period. (Tr. 1539; 1544; 1553; 1557; 1561; 1569; 1573; 1582; 1586; 1590; 1594). When the opinions are read in context—the ALJ's reasoning falls apart.

The last main reason the ALJ gave speaks the "basis for exemption" on the Monroe County forms. (Tr. 1325). "In contrast to Social Security disability claims, the county form was a basis for exemption if a client's limitations were deemed more than mild." (Tr. 1325). That is not indicated anywhere on the forms in the record. The majority of the forms are broken into four categories—and each category includes a specific functional limitation. (Tr. Ex. 1539). LMHC Rodic mainly identified "moderate" limitations, which were defined as "unable to function ten to twenty five percent of the time." (Tr. 1539). This limitation only becomes work preclusive when compared to vocational expert testimony. The vocational expert stated that a lack of attention and concentration up to twenty five percent "would be well beyond any industrial standard or employer acceptability, so that would eliminate all work." (Tr. 1350). He confirmed that a range of ten to fifteen percent off task would be the threshold for work in the national economy—and fifteen percent or beyond would preclude any type of work. (Tr. 1350). Again, these opinions need to be read in context with the balance of the record—including the vocational expert testimony. The ALJ's failure to do so plainly warrants remand.

In the end, the ALJ needed to fully and fairly evaluate the eleven opinions that supported a finding of disability during the relevant period. These statements were provided by the practitioner who provided the vast majority

18

of Plaintiff's treatment from 2016 to 2019. She bought a unique perspective and understanding of Plaintiff's mental impairments that Agency sources simply could not. As such, the ALJ's choice to essentially reject these opinions without properly applying the regulations warrants remand.

ECF No. 8-1 at pp. 11-15 (emphasis added).[8]

In considering Plaintiff's claim of error by the ALJ, the Court notes preliminarily that although Rodic was a licensed mental health counselor, and therefore classified as an "other source" under the regulations applicable to Plaintiff's claim, the ALJ could not simply disregard her opinion for that reason. *See, e.g., Feliciano o/b/o D.F. v. Comm'r of Soc. Sec.*, No. 1:18-CV-00502 EAW, 2020 WL 1815754, at *3 (W.D.N.Y. Apr. 10, 2020) ("As a licensed mental health counselor, Ms. Horan is not an acceptable medical source under the regulations. Rather, Ms. Horan is an "other source," and therefore her opinion is not entitled to controlling weight.   However, "other source" evidence, including evidence offered by licensed mental health counselors, is "material on the issues of 'the severity of [plaintiff's] impairment(s) and how it affects [her] ability to work.'   An ALJ may not disregard opinion evidence from an "other source" solely because it was not authored by an acceptable medical source.") (citations omitted).

The ALJ could, however, give an "other source" opinion little or no weight, provided

---

[8] Defendant opposes this argument and maintains that the ALJ properly gave the treating therapists' reports only little weight for essentially the same reasons given by the ALJ: 1) "the opinions were each for two to three months duration regarding Plaintiff's employability"; 2) the forms "indicated that Plaintiff had at most moderate limitations"; 3) the opinions "were not from acceptable medical sources and were not entitled to controlling weight"; 4) the forms were for county purposes and "were not intended to address Social Security's criteria"; and 5) in response to a letter from Plaintiff's attorney requesting that Genesee Mental Health complete a questionnaire, Genesee Mental Health declined to respond to the questionnaire "in detail" since the office "do[es] not focus on specific work readiness and assessing the client's employability."   ECF No. 14-1 at pp. 7-8 (quoting from Tr. 1250).

that he applied the appropriate factors and explained his reasoning:

> SSR 06–03p provides that the ALJ must at least consider relevant medical evidence in the case record provided by "[m]edical sources who are not 'acceptable medical sources,' such as ... licensed clinical social workers...." SSR 06–03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). "Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability ... decision, the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence allows a ... reviewer to follow the adjudicator's reasoning...." *Id*. at *6.
>
> In other words, "'[w]hile the Commissioner is thus free to decide that the opinions of 'other sources' ... are entitled to no weight or little weight, those decisions should be explained.'" *Oaks v. Colvin*, No. 13–CV–917–JTC, 2014 WL 5782486, at *8 (W.D.N.Y. Nov. 6, 2014) (quoting *Sears v. Astrue*, No. 2:11–CV–138, 2012 WL 1758843, at *3 (D.Vt. May 15, 2012)).

*Piatt v. Colvin*, 80 F. Supp. 3d 480, 493 (W.D.N.Y. 2015).

> [T]he ALJ "should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03P, at *6. When there is conflicting evidence in the claimant's record, the consistency of the opinion with the other evidence in the record is a proper factor for an ALJ to consider when weighing an opinion from an other source. *See* 20 C.F.R. § 416.927(c)(4). Other factors include the length and nature of the relationship between the opinion source and the claimant, whether evidence supports the opinion, whether the source of the opinion has a relevant specialization, and other factors the claimant brings to the Commissioner's attention. *Id.* at § 416.927(c)(1)-(6).

*Douglas J. v. Comm'r of Soc. Sec.*, No. 1:20-CV-699-LJV, 2022 WL 976894, at *2

20

(W.D.N.Y. Mar. 31, 2022);[9] *see also, Blasco v. Comm'r of Soc. Sec.*, No. 5:13-CV-576 GLS, 2014 WL 3778997, at *5 (N.D.N.Y. July 31, 2014) ("[T]he ALJ's explanation that the restrictive opinion is inconsistent both internally, and with the other evidence of record, is a sufficient basis for discounting the opinion of an "other source[.]"); *Wilcox v. Comm'r of Soc. Sec.*, No. 16-CV-726-MJR, 2018 WL 4090328, at *4 (W.D.N.Y. Aug. 28, 2018) ("SSR 06-03p directs the ALJ to employ the same factors in evaluating opinions from other sources as are used to evaluate the opinions of acceptable medical sources. *Id*. at *11-12. These factors include: the frequency of treatment, consistency with other evidence in the record, degree of supporting evidence, thoroughness of explanation, and whether the source has an area of expertise. *Id*. Not every factor will apply in every case. *Id*. Evidence from other sources cannot be used to establish the existence of a medically determinable impairment, but it may provide insight into the severity and effects of impairments on an individual. *Id*. at *4-5.").

However, in the instant case the ALJ did not expressly address any of the "*Burgess*

---

[9] *See also*, Titles II & Xvi: Considering Opinions & Other Evidence from Sources Who Are Not "Acceptable Med. Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental & Nongovernmental Agencies, SSR 06-03P at *4-5 (S.S.A. Aug. 9, 2006) ("Although the factors in 20 CFR 404.1527(d) and 416.927(d) explicitly apply only to the evaluation of medical opinions from "acceptable medical sources," these same factors can be applied to opinion evidence from "other sources." These factors represent basic principles that apply to the consideration of all opinions from medical sources who are not "acceptable medical sources" as well as from "other sources," such as teachers and school counselors, who have seen the individual in their professional capacity. These factors include: • How long the source has known and how frequently the source has seen the individual; • How consistent the opinion is with other evidence; • The degree to which the source presents relevant evidence to support an opinion; • How well the source explains the opinion; • Whether the source has a specialty or area of expertise related to the individual's impairment(s); and • Any other factors that tend to support or refute the opinion.").

factors" listed in the preceding paragraph when evaluating the probative value of Rodic's opinions. [10]  Nor did the ALJ acknowledge that Rodic's opinions, if accepted, could establish disability.[11]   Instead, the ALJ found that the opinions deserved little weight for the reasons discussed above, related to the form of the opinions. Tr. 1324-1325.   The Court agrees with Plaintiff that those reasons were dubious.

For example, the ALJ's assertion that the evaluation forms "did not describe the claimant's limitations in vocational terms" is contradicted both by the forms themselves and the ALJ's own prior acknowledgment that the forms "assessed the claimant's abilities to perform simple instructions and tasks, maintain grooming and hygiene, work a low stress job, complete simple and complex tasks independently, maintain attention and concentration, and maintain regular attendance to a routine." Tr. 1324, 1325.

Additionally, the ALJ asserted that Rodic's evaluations deserved only little weight since they "were temporary in nature," Tr. 1324 ("The assessed limitations were temporary in nature; they generally were for a three-month period."), by which he apparently meant that none of the evaluations *individually* showed that Plaintiff's impairments would last for at least twelve months. *See* 42 U.S.C. § 423(d)(1)(A) (disability involves impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months").   However, while that may be true, the ALJ's reasoning ignores the fact that Rodic's evaluations

---

[10] "Although LCMHC Cetin is not an acceptable medical source, her opinion is entitled to consideration using the factors set forth in 20 C.F.R. § 404.1527(f) and the *Burgess* factors." *Allison F. v. Comm'r of Soc. Sec.*, No. 2:15-CV-00110, 2020 WL 13581774, at *8 (D. Vt. Dec. 30, 2020) (referring to *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008)).

[11]  The Court says "could" rather than "would," since Rodic's opinions concerning Plaintiff's alleged "moderate" limitations are expressed in a range between 10% and 25%.

*cumulatively* assess the severity of Plaintiff's mental impairments over a period of several years.[12]

Lastly, the ALJ stated that Rodic's opinions were entitled to only little weight since they were "countered by" Rodic's letter to Plaintiff's counsel stating that she was unable to provide a functional evaluation to Plaintiff for use in the administrative proceeding since her treatment of Plaintiff had "not focus[ed] on" "work readiness" or "employability."   Tr. 1252.   The Court is aware of another case from this District that involved almost identical facts, meaning that the ALJ in that case similarly rejected opinions from an "other source" mental health therapist who had indicated in a subsequent letter that her treatment of the claimant had not focused on work readiness or employability.   Although, in that case, the argument that the ALJ had properly rejected the opinions for that reason was being raised by the Commissioner in the federal court action as a *post hoc* justification for affirming the ALJ's decision.   Nevertheless, in rejecting the Commissioner's argument for affirmance, the district court stated in pertinent part as follows:

> Plaintiff argues the ALJ erred when he assigned "no weight" to the functional assessments of LCSW Colosi and LMHC Prince.   Although plaintiff agrees that ALJ Greenberg was not required to find these "other source" opinions controlling, he argues the ALJ was nonetheless required to evaluate them "according to a number of factors, including the length, nature and extent of the treatment relationship and the frequency of examination; evidence in support of the opinion; the opinion's consistency with the record as a whole; and other relevant factors."   (quoting *Evans v. Colvin*, 649 Fed. App'x 35, 38-39 (2d Cir. 2016) (Summary Order)).
>
> The Commissioner argues that the ALJ properly rejected the assessments because they "were neither binding nor persuasive in the context of the

---

[12] See, Pl. Memo of Law, ECF No. 8-1 at pp. 13-14.

Social Security program". <u>In addition, the ALJ pointed out that, in her January 15, 2018 letter, LCSW Colosi "acknowledged that she does not assess her clients['] work readiness and/or employability.</u>"

I agree with plaintiff that the ALJ erred when he failed to analyze the functional assessments of LCSW Colosi and LMHC Prince according to the SSA's own rules. Accordingly, remand is required for a proper RFC analysis, and for further development of the record, if necessary. It is well settled that the RFC need "not perfectly correspond with any of the opinions of medical sources cited in his decision". *Matta v. Astrue*, 508 Fed. Appx. 53, 56 (2d Cir. 2013) (Summary Order). However, when an ALJ rejects an opinion from a medical source concerning plaintiff's functional abilities, he or she must explain why the opinion was not adopted. *See Dioguardi v. Commissioner of Social Security*, 445 F.Supp.2d 288, 297 (W.D.N.Y. 2006) ("[u]nder the Commissioner's own rules, if the ALJ's 'RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.' Soc. Sec. Ruling 96-8p (1996)").

Social Security Ruling ("SSR") 06-03p states that the same factors used to consider opinions from "acceptable medical sources" will be used to examine evidence from medical sources who are not "acceptable medical sources", such as licensed clinical social workers and other therapists, and from non-medical sources, like "rehabilitation counselors". SSR 06-03P, 2006 WL 2329939 (2006), pp. *2, *4.

"The ALJ must consider, *inter alia*, the '[l]ength of the treatment relationship and the frequency of examination'; the '[n]ature and extent of the treatment relationship'; the 'relevant evidence ... particularly medical signs and laboratory findings,' supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (citing 20 C.F.R. § 404.1527(d), now (c), which applies to claims for Social Security Disability benefits and contains provisions identical to those in 20 CFR § 416.927(c), applicable here in the context of this claim for SSI). While the conclusions reached by another agency concerning whether a person is disabled are not binding on the Commissioner, the SSA has stated that it "will evaluate the opinion evidence from medical sources, as well as 'non-medical sources' who have had

24

contact with the individual in their professional capacity, used by other agencies, that are in our case record, in accordance with 20 CFR 416.927." SSR 06-03P, p. *7.

***

ALJ Greenberg gave "no weight" to the employability assessments completed by LCSW Colosi and LMHC Prince. In doing so, he failed to acknowledge that they were authored by plaintiff's treating mental health professionals and identified them as "assessments provided by Monroe County Department of Human Services". [ALJ's Decision at] p. 18. He acknowledged that they "point to a degree of mental limitation that would preclude work". *Id*. In discounting them, however, he did not point to any of the medical or other evidence in the record or consider any of the other factors required by SSR 06-03 or *Burgess, supra*. Instead, he stated that they were "prepared for a different government program that applies different standards" than the SSA. *Id*. ALJ Greenberg explained that he f[ound] "the assessments of Dr. Ransom and Dr. Butensky generally to be more persuasive, particularly in the context of the disability standards applicable in this case". *Id*. However, he did not describe which parts of the functional assessments of LCSW Colosi and LMHC Prince conflict with those of Drs. Ransom and Butensky. Nor did he explain, given his opinion that both Drs. Ransom and Butensky "understate" plaintiff's limitations, why or how the functional assessments of plaintiff's treating mental health providers overstated his limitations.

These failures are highlighted by the "significant" weight that ALJ Greenberg assigns to another piece of evidence authored by LCSW Colosi: her January 15, 2018 letter. . . . The Commissioner argues that the ALJ "properly afforded the employability assessments no weight" [since] LCSW Colosi's January 15, 2018 letter, "in contrast to her employability assessments", "acknowledged that she does not assess her clients['] work readiness and/or employability". However, "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve". *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). Even if the Commissioner's explanation would have been a valid basis to give little weight to LCSW Colosi's opinion, since "neither the ALJ nor the Appeals Council analyzed the substance of [the] opinion, the court 'may not accept appellate counsel's *post hoc* rationalizations for agency action.'" *Jessica R. v. Berryhill*, 2019 WL 1379875, *10 (D. Vt. 2019) (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d

Cir. 1999)). Further, to the extent that LCSW Colosi's statements are contradictory and require clarification, the ALJ could have recontacted her. Remand is required because ALJ Greenberg did not acknowledge that the employability assessments were authored by plaintiff's treating mental health providers, nor did he discuss any of the functional assessments contained therein as required by SSR 06-03P and *Burgess, supra*. Although he is not required to credit the conclusions in the assessments concerning disability or employability, he may not simply ignore them in their entirety. *See Stack v. Commissioner*, 2020 WL 5494494, *4-6 (W.D.N.Y. 2020) (finding that, although not required to accept the VA's determination of disability, the ALJ nonetheless "committed legal error in failing to address the functional assessments" in the record).

Even if ALJ Greenberg ultimately discounts these opinions for permissible reasons, plaintiff is "entitled to know why the ALJ chose to disregard the portions of the medical opinions that were beneficial to her application for benefits." *Dioguardi*, 445 F.Supp.2d at 297.

*Juman L. S. v. Comm'r of Soc. Sec.*, No. 6:19-CV-06925 (JJM), 2021 WL 1117026, at *4–6 (W.D.N.Y. Mar. 24, 2021) (citations to record and footnotes omitted).

Again, the facts in *Juman* are almost identical to the facts of this case.    Although, and significantly, unlike the ALJ in *Juman*, the ALJ in the instant case did not acknowledge that Rodic's opinions, if accepted, would "point to a degree of mental limitation that would preclude work."[13]   Instead, the ALJ seemingly downplayed that fact by stating only that Rodic's opinions "assessed 'no' limitations to 'moderate' limitations." Tr. 1324.

In any event, the Court agrees with the reasoning expressed in *Juman*, and finds that the ALJ committed reversible error by rejecting Rodic's opinions without any

---

[13] As already discussed, Rodic had previously assessed Plaintiff as having up to "moderate" limitations, defined by her as an inability to function between 10% and 25% of the time, and the VE had testified that an inability to maintain attention and concentration for more than 14% of the time would be work preclusive.

evaluation of the *Burgess* factors or other good reason. In this regard, the Court does not believe that Rodic's letter, declining to provide a further evaluation and stating that her treatment of Plaintiff had not focused on Plaintiff's "work readiness" and "employability," Tr. 1252, enabled the ALJ to simply disregard Rodic's prior evaluations in which she clearly assessed Plaintiff's ability to perform specific relevant work-related functions. Consequently, the Court finds that remand for further administrative proceedings is required, to allow the ALJ to properly evaluate the substance of Rodic's opinions.

CONCLUSION

For the reasons discussed above, Plaintiff's motion (ECF No. 8) for judgment on the pleadings is granted, Defendant's cross-motion (ECF No. 14) for the same relief is denied, and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order, pursuant to the fourth sentence of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment for Plaintiff and close this action.

So Ordered.

Dated: Rochester, New York
   February 28, 2025

          ENTER:

          CHARLES J. SIRAGUSA
          United States District Judge